## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Equity Bank,

          Plaintiff,

v.                                        Case No. 12-1311-JWL

U.S. Bank National Association,

          Defendant.


## MEMORANDUM & ORDER

Plaintiff filed suit against defendant seeking a preliminary and permanent injunction, declaratory relief and damages arising out of contractual disputes between the parties. Relying on a forum selection clause in one of the parties' contracts, defendant moves to dismiss plaintiff's complaint for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) (doc. 12). As explained in more detail below, the motion to dismiss is denied, but the court transfers the case to the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1406(a).


## I.    Background

In April 2007, plaintiff Equity Bank and defendant U.S. Bank entered into a contractual agreement under which U.S. Bank, as authorized Master Servicer, purchased and then sold Equity Bank-originated loans to the Federal Home Loan Mortgage Corporation ("Freddie Mac"). The parties refer to this agreement as the "Kansas Agreement." This agreement does

not contain a forum selection clause.  Equity Bank contends that an express condition in the Kansas Agreement of U.S. Bank's service as Master Servicer was that prior to making a repurchase demand on Equity Bank, U.S. Bank had to repurchase the loan from Freddie Mac. Equity Bank originated four loans that it subsequently sold to U.S. Bank under the Kansas Agreement and that U.S. Bank, in June 2012, demanded that Equity Bank repurchase. According to Equity Bank, U.S. Bank demanded that Equity Bank repurchase the loans despite the fact that it had not yet repurchased the loans from Freddie Mac.  Equity Bank refused to repurchase the loans, contending that the grounds stated by U.S. Bank for its repurchase demand were inaccurate and without foundation; that U.S. Bank did not own the loans that it was demanding that Equity Bank repurchase; and that U.S. Bank had not suffered any loss relating to the loans.

Prior to U.S. Bank's repurchase demand, the parties, on September 28, 2010, entered into another contractual agreement under which Equity Bank sold conventional mortgage loans to U.S. Bank.  The parties refer to this agreement as the "Correspondent Agreement."  This agreement contains a forum selection clause requiring that "[a]ny disputes arising out of or relating to this Agreement, including but not limited to any alleged breach of this Agreement, shall be venued exclusively in the state or federal courts in the State of Minnesota . . . ."  Equity Bank alleges that U.S. Bank, in August 2012, unilaterally deducted the entire servicing-release premium owed to Equity Bank for the sale of three loans sold under the Correspondent Agreement and notified Equity Bank that it would no longer honor the Correspondent Agreement with regard to future loan sales by Equity Bank to it.  Equity Bank further alleges that U.S. Bank informed Equity Bank that it intended to collect a set-off on all remaining loans

it had purchased from Equity Bank under the Correspondent Agreement based on Equity Bank's refusal to repurchase the four loans at issue under the Kansas Agreement.

On August 17, 2012, U.S. Bank filed a complaint in federal court in Minnesota asserting claims against Equity Bank for its failure to repurchase the loans under the Kansas Agreement. One week later, Equity Bank filed this action, asserting five causes of action against U.S. Bank. In Count I, Equity Bank seeks an injunction precluding U.S. Bank from withholding servicing-release premiums under the Correspondent Agreement.  In Count II, Equity Bank seeks a declaration as to whether U.S. Bank has the right to assert its repurchase demands and, consequently, whether U.S. Bank is entitled to a set-off of monies on loans sold under the separate Correspondent Agreement.  Equity Bank asserts a claim for conversion in Count III based on U.S. Bank's withholding the servicing-release premiums under the Correspondent Agreement.  Count IV asserts a claim for breach of the Correspondent Agreement and Count V asserts a claim for tortious interference with an existing contract and/or prospective business advantage.  While Count V does not specifically reference either Agreement, Equity Bank contends that U.S. Bank interfered with a merger between Equity Bank and First Community Bank by "communicating about its dispute with Equity Bank" to other national banks, who thereafter informed First Community Bank that they would no longer be locking future loans with First Community Bank.  According to Equity Bank, First Community's inability to lock loans with major lending institutions severely hampered its ability to do business and, in turn, severely damaged the asset that Equity Bank had previously committed to acquire for a substantial set sum in the merger agreement.

3

## II.    Discussion

U.S. Bank moves to dismiss Equity Bank's complaint, contending that Equity Bank's claims, without exception, clearly "arise out of or relate to" the Correspondent Agreement such that the broad forum selection clause of that Agreement applies.  In the alternative, U.S. Bank contends that if any of Equity Bank's claims are construed to relate solely to the Kansas Agreement, then the doctrine of concurrent jurisdiction requires that those claims be heard in the District of Minnesota, where U.S. Bank's first-filed action is presently pending.  *See Hospah Coal Co. v. Chaco Energy Co.*, 673 F.2d 1161, 1163 (10th Cir. 1982) (asserting general rule that when two courts have concurrent jurisdiction, the first court in which jurisdiction attaches under the first-to-file rule has priority to consider the case).

Equity Bank does not dispute U.S. Bank's interpretation of or the validity of the forum selection clause in the Correspondent Agreement and it does not contend that enforcement of the forum selection clause would be unreasonable.  Rather, Equity Bank contends that only Count IV is subject to the forum selection clause and it offers to withdraw that claim.  According to Equity Bank, then, the remaining claims do not "arise out of or relate to" the Correspondent Agreement; the claims stem from the dispute under the Kansas Agreement.  Stated another way, Equity Bank contends that while its claims reflect problems under the Correspondent Agreement, those problems are direct consequences of the initial dispute under the Kansas Agreement.

The court is not persuaded by Equity Bank's argument—an argument which essentially concedes that the claims "relate to" the Correspondent Agreement even if those claims "arise" in the first instance from disputes under the Kansas Agreement.  By its own terms, the complaint

4

sets forth claims that expressly "relate to" the Correspondent Agreement.  Count I seeks an injunction preventing U.S. Bank "from withholding the servicing-release premiums due to it . . . under the Correspondent Agreement."  Count II seeks a declaration as to U.S. Bank's right to assert its repurchase demands in light of U.S. Bank's assertion that it is entitled "to a set-off of monies on loans sold under the separate 2010 Correspondent Agreement, and has already begun wrongly retaining such monies."  Count III seeks damages based on U.S. Bank's alleged conversion of "premium payments [Equity Bank] was entitled to under the Correspondent Agreement."  While Count V does not expressly refer to the Correspondent Agreement or the Kansas Agreement, it is reasonable to conclude that it relates to the entirety of the dispute between the parties, including the dispute over servicing-release premiums under the Correspondent Agreement.[1]  In the end, then, Equity Bank simply cannot get around the broad language of the forum selection clause that requires that any disputes "relating" to the Correspondent Agreement be brought in state or federal court in Minnesota.

Nonetheless, although venue in this District is improper, the court declines to dismiss plaintiff's complaint and exercises its discretion to transfer the complaint—including Count IV, which the court deems not withdrawn in light of the court's resolution of the motion—to the United States District Court for the District of Minnesota.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss plaintiff's complaint for improper venue (doc. 12) is denied, but the court exercises its

---

[1]     Even if Count V related solely to the Kansas Agreement, the court would nonetheless transfer that claim to the District of Minnesota under the first-filed rule.

discretion under 28 U.S.C. § 1406(a) and transfers this case to the United States District Court for the District of Minnesota.

**IT IS SO ORDERED.**

Dated this 15th day of November, 2012, at Kansas City, Kansas.

s/ John  W. Lungstrum
John W. Lungstrum
United States District Judge